**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: _____**

ALBA HERRERA, on behalf of herself and
all others similarly situated,

      Plaintiff,

vs.

TD BANK, N.A.,

      Defendant.

CLASS ACTION

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Alba Herrera ("Plaintiff"), individually and on behalf of all others similarly situated, by and through counsel, brings this Class Action Complaint ("Complaint") against Defendant TD Bank, N.A. ("TD Bank") and based upon personal knowledge with respect to herself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

## INTRODUCTION

1.  Consumers who have never banked with TD Bank have recently discovered that TD Bank opened fraudulent accounts using their identity and personal information. The consumers were not aware of these accounts being opened, did not authorize them, and in Plaintiff's case, had never even banked with TD Bank in the past.

2.  TD Bank's practice of allowing unauthorized accounts to be opened without minimal verification or security authentication procedures is the latest in a series of abusive and fraudulent practices that TD Bank has employed.

3.  In 2016, Wells Fargo was found liable for fraud because its employees were

opening fake accounts for Wells Fargo customers to drive up profit.  Wells Fargo paid billions in fines and civil settlements. After the Wells Fargo scandal, big banks like TD Bank pledged that, unlike Wells Fargo, their practices were lawful and proper.

4.      However, investigations and reports on TD Bank tell a different story.  In reality, TD Bank has a history and routine practice of opening accounts in the names of consumers without lawful authority and permission from the people whose identities were used to open the accounts.

5.      Most recently, unauthorized third parties have capitalized on TD Bank's loose practices by using TD Bank's Online Banking platform to open fraudulent checking and savings accounts with consumers' stolen Personal Identifying Information ("PII")[1] (the "Unauthorized Account Openings").

6.      In February 2022, residents of the Sandhills area in North Carolina began receiving checks, debit cards, statements, and welcome letters from TD Bank.  The residents were shocked because they had never opened accounts with TD Bank, and the nearest TD Bank branch was 100 miles away in South Carolina.  TD Bank never reached out to them to confirm identity before opening the accounts.

7.      The local authorities opened an investigation and determined that over 1,000 Sandhills residents' names were used open unauthorized TD Bank accounts.

8.      As will be more fully explained below, Plaintiff and members of the Class have been significantly injured by the Unauthorized Account Openings and have incurred out-of-pocket expenses associated with the reasonable mitigation measures they were forced to employ.  Plaintiff

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

and the Class have also incurred damage to their credit.

9.      Plaintiff and the Class also face identity theft and damages associated with identity theft because their PII has fallen into the hands of cybercriminals.  TD Bank's negligent practices allowed cybercriminals to open fraudulent accounts using TD Bank's Online Banking platform.

10.     On behalf of herself and the Class preliminarily defined below, Plaintiff brings causes of action sounding in negligence, violations of the Fair Credit Reporting Act, and violations of the Electronic Funds Transfer Act.  TD Bank's failure to safeguard and properly authenticate those consumers' PII—including but not limited to their name, Social Security Number, date of birth, and government-issued identifications number—enabled unauthorized third parties to commit identity theft.  Plaintiff seeks damages and injunctive and declaratory relief arising from TD Bank's failure to safeguard the PII of thousands of consumers, resulting in the identity theft of those consumers, damage to their credit, and associated harms.

## PARTIES

11.     Plaintiff Alba Herrera is a natural person who lives in Cutler Bay, Florida, and is therefore a citizen of Florida.

12.     Defendant TD Bank is a national bank with its headquarters and principal place of business located in Cherry Hill, New Jersey and is therefore a citizen of New Jersey.  Among other things, TD Bank is engaged in the business of providing retail banking services to consumers.  TD Bank operates banking centers, and thus conducts business, throughout the State of Florida, including within this District.

## JURISDICTION AND VENUE

13.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 based on the federal statutes that Plaintiff claims were violated.  It is also proper pursuant to the

Class Action Fairness Act, 28 U.S.C. § 1332(d), because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which at least one member of the class (Ms. Herrera) is a citizen of a State different from the Defendant. The number of members of the proposed Class in aggregate exceeds 100 consumers. 28 U.S.C. § 1332(d)(5)(B).

14. This Court has personal jurisdiction over TD Bank because TD Bank regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in Florida.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District – where Plaintiff lives.

## FACTUAL ALLEGATIONS

**A.** **TD Bank's Online Banking Platform Allows Unauthorized Third Parties to "Open an Account in Minutes"**

16. Defendant TD Bank is one of the ten largest banks in the U.S. and provides over 9.8 million consumers "with a full range of retail, small business and commercial banking products and services."[2]

17. TD Bank is licensed to do business in over fifteen states and the District of Columbia, and has over 1,100 locations throughout the Northeast, Mid-Atlantic, Metro D.C., the Carolinas, and Florida.

18. TD Bank accumulates and manages highly sensitive PII of consumers through its banking services and products.

---

[2] *See* TD Bank's Business Profile, dated July 31, 2022 (attached as **Exhibit A**).

19.     In collecting and maintaining consumer PII, TD Bank both implicitly and explicitly agrees it will safeguard the data using reasonable means according to its internal policies and federal and state law.

20.     Despite recognizing its duty to do so, TD Bank has not implemented reasonable cybersecurity safeguards or policies to protect consumer PII, or trained its employees to prevent, detect, and stop unauthorized third parties from opening fraudulent accounts on TD Bank's Online Banking platform. As a result, TD Bank leaves vulnerabilities in its systems for unauthorized third parties to exploit consumer PII and commit identity theft.

21.     This is the case even though TD Bank is aware of the importance of authenticating the personal information it accumulates in its ordinary course of business. Indeed, TD Bank ensures consumers that it provides a "secure online experience that protects [its] public website and Online Banking."  TD Bank states that it uses "industry-accepted practices" which allows it to "authenticate [consumers'] identity when they access TD Bank's online and mobile services"[3]:

---

[3] *See* https://www.td.com/us/en/personal-banking/security-center (last visited September 2, 2022).

## What we do

The security of your personal information and our website is our top priority – however you bank. And our concern for the safety of your financial and personal information goes beyond our banking relationship with you. We'll work with you to help prevent fraud, phishing, SMShing and vishing – and provide you with the latest tools and information to help safeguard your mobile, desktop and online experience.

## Our online and mobile security commitment

TD Bank is committed to providing you with a secure online experience that protects our public website and Online Banking, our mobile apps and your confidential information. Our employees are trained on our security policies and procedures and work diligently to protect the integrity of your information.

We use industry-accepted security practices, including firewalls and encryption, to safeguard the security of your personal financial information. These controls allow us to properly authenticate your identity when you access our online and mobile services and help to protect your information as it travels over the internet between your device and TD Bank. We also constantly monitor and assess the security of our website and mobile apps.

22.    Despite its assertion that "the security of [consumers'] personal information and [its] website is [its] top priority," TD Bank's Online Banking platform has minimal security requirements in place before allowing a new account to be opened online.

23.    In fact, TD Bank's Online Banking platform allows consumers to "open a checking account online in minutes."[4]  TD Bank does not make any attempts to reach out to an individual to confirm his or her identity before opening a new account. Under TD Bank's Online Banking platform, consumers and cybercriminals can open a checking account with only a social security number, a picture of a government-issued ID, and an individual's personal information.

24.    TD Bank's account opening security protocols are so lax that it allows unauthorized third parties to open an account with expired phone numbers and expired IDs, and addresses that are no longer current. No phone call, Zoom meeting, or personal contact is otherwise made by TD

---

[4]   "Open a Checking Account Online in Minutes | TD Bank Checking Accounts," https://www.td.com/us/en/personal-banking/checking-accounts (last visited September 2, 2022). (Attached as **Exhibit B**).

Bank to an account applicant before an account is opened.

25.     Conversely, it is much more difficult to close an account with TD Bank once an account has already been opened.  An individual must go to a branch in person and present identification to close an account.

**B.     TD Bank Causes Identity Theft by Allowing Unauthorized Accounts to be Opened using Plaintiff and the Class Members' PII**

26.     Plaintiff and the members of the Class are consumers who are victims of Unauthorized Account Openings at TD Bank under their identities, without their knowledge or authorization.

27.     TD Bank collects and maintains PII in its systems for the purpose of opening and maintaining checking, savings, and investment accounts.

28.     TD Bank represents to consumers that it takes adequate measures to secure individuals' PII and properly authenticate information it receives.

29.     Despite its duties and alleged commitments to safeguard PII, TD Bank does not follow industry standard practices in securing consumers' PII.

**C.     The 2022 Sandhills Unauthorized Account Openings**

30.     TD Bank's practice of allowing fake accounts to be opened without authorization or approval has been occurring on a large scale since at least February 2022.

31.     In February 2022, residents of the Sandhills area in North Carolina began receiving checks, debit cards, statements, and welcome letters from TD Bank.  The residents were shocked because they had never opened accounts with TD Bank, and the nearest TD Bank branch was 100 miles away in South Carolina.

32.     The local authorities opened an investigation and determined the Sandhills residents whose names were used to open TD Bank accounts were victims of identity fraud (the

"Sandhills Unauthorized Account Openings").

33.     Cybercriminals bypassed TD Bank's inadequate security systems on its Online Banking platform and fraudulently opened multiple checking and savings accounts under consumers' identities.

34.     The vast majority of the victims of the Sandhills Unauthorized Account Opening were not TD Bank customers and had never banked with TD Bank.

35.     By February 2022, it was estimated that over 1,000 residents in the Sandhills area had their identities stolen due to fake TD Bank accounts being opened in their names.[5]

36.     Since the Sandhills Unauthorized Account Openings occurred, many Sandhills victims have struggled to get TD Bank to close their accounts.  The victims were told by TD Bank that the fake accounts had been closed, but the victims continued to receive text messages and correspondence related to the fraudulent accounts.  The fraudulent accounts often still appeared as being "active" on the victims' credit reports.

**D.     The Unauthorized Account Openings are the Latest in a Long Series of TD Bank's Fraudulent and Abusive Practices**

37.     Despite its declaration that "the security of [consumers'] personal information and its website is [its] top priority,"[6] TD Bank has a track record of prioritizing its own profits over protecting consumers' financial and personal information.

38.     On May 4, 2022, *Capitol Forum* reported on TD Bank's abusive compensation and incentivization system, which uses a "points system" that rewards employees for placing profits

---

[5] Keely Arthur, *Hundreds in Sandhills Area Victims of Fraudulent Bank Accounts*, CAR LINK MALL (Feb. 25, 2022), https://www.carlinkmall.com/hundreds-in-sandhills-area-victims-of-fraudulent-bank-accounts-wral-com.

[6] *See* https://www.td.com/us/en/personal-banking/security-center (last visited September 2, 2022).

over fair service for consumers and permitted TD Bank employees to create new accounts for customers.[7]  The program "incentivized employees to open as many accounts and push as many customers into overdraft protection as possible, threatening employees with lost bonuses or even firings if goals were not met."[8]

39.  In 2016, Wells Fargo was accused of creating millions of accounts for their customers without the customers' consent or knowledge, "leading to billions paid in civil and criminal probes, the resignation of Wells Fargo CEO John Stumpf, and the imposition of a growth cap by the Federal Reserve."

40.  Shockingly, the *Capital Forum* Report uncovered that in 2016-2017, the Office of the Comptroller of the Currency ("OCC") found that TD Bank had been using similar tactics as Wells Fargo.  Specifically, the OCC's investigation found that TD Bank "was one of a handful of retail financial institutions that had systemic problems in its account opening, verification, and sales processes," and that its "problematic account practices stretched across retail branches from Maine to Florida."

41.  According to the Report, the Acting Comptroller, for political reasons, failed to issue a fine or even require public disclosure of these practices and instead the OCC privately reprimanded TD Bank.

**E.  Plaintiff's Experience**

42.  Plaintiff Herrera is a Florida citizen.

---

[7] *The Capitol Forum,* "TD Bank/First Horizon: Faulty Accounts Didn't Draw Fines From Trump Official; Workers Say Suspect Practices Persis as Deal Approvals Sought," (May 4, 2022) https://thecapitolforum.com/td-bank-first-horizon-faulty-accounts-didnt-draw-fines-from-trump-officials-workers-say-suspect-practices-persist-as-deal-approvals-sought/

[8] Letter to OCC Acting Comptroller Hsu (June 14, 2022) (Attached as **Exhibit C**).

43.     On July 8, 2022, Plaintiff received an email from TD Bank thanking her for opening new accounts with them.  *See* **Exhibit D** (July 8, 2022 Email).  Specifically, the email contained information regarding two new accounts that had been opened using her identity: (1) a TD Convenience Checking account, and (2) a TD Simple Savings account.

44.     Plaintiff was not aware that the accounts had been opened and did not authorize the opening of the accounts.

45.     Plaintiff has never been a TD Bank customer.

46.     Upon information and belief, unauthorized third parties accessed Plaintiff's PII from an unknown source and used her PII to open the checking and savings accounts under Plaintiff's name, using TD Bank's Online Banking platform.

47.     TD Bank allowed the unauthorized third party to open an account under Plaintiff's identity using an expired phone number, expired ID, and an address that was no longer current.

48.     Once Plaintiff realized that the above accounts had been opened using her identity, Plaintiff took numerous time-consuming steps in attempt to mitigate the damage, including:

a.      Calling and reporting the Unauthorized Account Openings to the TD Bank Fraud hotline;

b.      Taking time off work;

c.      Going to the nearest TD Bank Branch to close the unauthorized accounts;

d.      Reporting the identity theft to the FBI;

e.      Reporting the identity theft to local police;

f.      Freezing credit accounts;

g.      Changing passwords;

h.      Monitoring accounts; and

      i.      Signing up for credit monitoring services.

49.    Despite how easy it was for an unauthorized third party to open TD Bank accounts in Plaintiff's name, closing the unauthorized accounts was very burdensome to Plaintiff.  TD Bank's Fraud Department never returned the call Plaintiff placed to report the Unauthorized Account Opening. Only after Plaintiff went to a TD Bank branch in person and presented identification did TD Bank close the unauthorized accounts.

50.    To date, TD Bank has offered no compensation or explanation as to how these unauthorized accounts were opened. TD Bank also has not provided Plaintiff any credit monitoring services.

51.    Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, and effort. They have suffered, or are at an increased risk of suffering:

    a.      The loss of the opportunity to control how their PII is used;

    b.      The diminution in value of their PII;

    c.      The compromise and continuing publication of their PII;

    d.      Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.      Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Unauthorized Account Opening, including, but not limited to, efforts researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.      Unauthorized use of stolen PII; and

    g.      The continued risk to their PII, which remains in the possession of TD Bank and is

subject to further fraud so long as TD Bank fails to undertake the appropriate measures to protect the PII in its possession; and

h.      Current and future costs related to the time, effort, and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Unauthorized Account Opening for the remainder of the lives of Plaintiff and Class members.

52.    For example, Plaintiff has spent time, effort, and money to report in person the Unauthorized Account Opening to TD Bank, the FBI, and local police department. Plaintiff has signed up for credit monitoring through Experian, TransUnion, and Equifax.  Plaintiff works on a commission basis.  Her salary is directly correlated with the hours she works and calls to potential customers.  Plaintiff has lost money based on the time she has spent away from work on her efforts to mitigate the impact of the Unauthorized Account Opening.

53.    Defendant failed to protect the PII of Plaintiff and members of the proposed Class from criminal activity.  Specifically, Defendant failed to authenticate the PII of Plaintiff and members of the proposed Class to prevent them from being exploited by third parties engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (*i.e.*, identity fraud), all using the stolen PII.

54.    TD Bank's use of outdated and insecure security protocols that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, demonstrates a willful and conscious disregard for privacy, and has allowed the Unauthorized Account Opening.

55.    Further, TD Bank's failure to timely detect that consumers' PII was used to commit the Unauthorized Account Opening and remedy the inadequate security systems after the Sandhills

Unauthorized Account Opening demonstrates its nonchalant approach to cybersecurity and its institutional disregard for data protection.

56.     Defendant's failure to properly notify Plaintiff and members of the proposed Class of the Unauthorized Account Opening exacerbated Plaintiff's and members of the proposed Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Unauthorized Account Opening.

57.     TD Bank's practice of opening unauthorized accounts has caused significant financial losses, reputational and credit reporting damage, and related stress and hardship to Class members.  Specifically, TD Bank has:

a.      Allowed unauthorized electronic fund transfers or withdrawals from customer accounts;

b.      Placed or caused to be placed erroneous and derogatory information in credit reports when unauthorized accounts were opened, closed, or utilized.

58.     As a result of the Unauthorized Account Opening, Plaintiff now faces, and will continue to face, a heightened risk of identity theft, fraud, and damaged credit in the future.

**F.     TD Bank Failed to Adhere to FTC Guidelines or Industry Standards**

59.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. [9]   To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as TD Bank, should employ to protect against the unlawful exposure of PII.

60.     In 2016, the FTC updated its publication, *Protecting Personal Information: A*

---

[9] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Sep. 2, 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

*Guide for Business,* which established guidelines for fundamental data security principles and practices for business.[10]  The guidelines explain that businesses should:

    a.    protect the personal customer information that they keep;

    b.    properly dispose of personal information that is no longer needed;

    c.    encrypt information stored on computer networks;

    d.    understand their network's vulnerabilities; and

    e.    implement policies to correct security problems.

61.    The FTC recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[11]

62.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

63.    TD Bank's failure to employ reasonable and appropriate measures to protect against unauthorized use of consumers' PII by allowing the Unauthorized Account Opening constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

---

[10] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N (Sep. 28, 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.
[11] *See Start with Security*, *supra* note 30.

64.     As a long-standing member of the banking community, and being one of the nation's largest banks, TD Bank knew or should have known the importance of safeguarding consumer PII and of the foreseeable consequences of identity theft.  Despite this knowledge, however, TD Bank failed to take adequate cyber-security measures to prevent the Unauthorized Account Opening from happening.

65.     TD Bank has not provided any compensation to consumers victimized by the Unauthorized Account Opening; offered to provide any assistance or compensation for the costs and burdens — current and future — associated with the identity theft and fraud resulting from the Unauthorized Account Opening; or taken any other effort to assist the Plaintiff and Class members from repairing their credit.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. Proc. 23. The Class is preliminarily defined as:

> All individuals who had a checking or savings account opened under their identity by TD Bank without their authorization using PII for Unauthorized Account Opening via TD Bank's online banking platform.

67.     Excluded from the Class are TD Bank and its subsidiaries and affiliates, officers, directors and members of their immediate families and any entity in which it has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

68.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es) if necessary, before this Court determines whether certification is appropriate.

69.     *Fed. R. Civ. Proc. 23(a)(1) Numerosity:* The Class is so numerous such that joinder

of all members is impracticable. Upon information and belief, and subject to class discovery, the Class consists of over 1,000 consumers who have had an unauthorized account(s) opened in their name at TD Bank, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to TD Bank's records. TD Bank has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

70.     *Fed. R. Civ. Proc. 23(a)(2) Commonality and Fed. R. Civ. Proc. 23(b)(3) Predominance:* There are numerous questions of law and fact common to the Class. As such, there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual members of the Class because TD Bank has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

a.     Whether TD Bank had a duty to safeguard and authenticate consumer PII at the time of account opening;

b.     Whether TD Bank knew or should have known of the susceptibility of TD Bank's online account enrollment program to fraudulent accounts;

c.     Whether TD Bank's security measures to detect fraud were reasonable and met industry standards;

d.     Whether TD Bank was negligent in failing to implement reasonable and adequate security procedures and practices;

e.     Whether TD Bank's failure to implement adequate data security measures allowed the Unauthorized Account Opening to occur;

f.     Whether TD Bank's conduct, including its failure to act after the Sandhills

incident, resulted in or was the proximate cause of Unauthorized Account Opening, resulting in the unlawful use of the Plaintiff's and Class members' PII;

g.      Whether Plaintiff and Class members were injured and suffered damages or other losses because of TD Bank's failure to reasonably protect and authenticate consumers' PII at account opening;

h.      Whether Plaintiff and Class members are entitled to relief;

i.      Whether TD Bank failed to adequately notify Class members of the use of their PII;

j.      Whether TD Bank breached its duty to Class members by failing to properly safeguard their PII and by failing to notify them of Unauthorized Account Opening;

k.      Whether TD Bank's violation of EFTA and FCRA constitutes evidence of negligence; and

l.      Whether TD Bank placed or caused to be placed erroneous and derogatory information in credit reports when unauthorized accounts were opened, closed, or utilized.

71.      *Fed. R. Civ. Proc. 23(a)(3) Typicality:* Plaintiff's claims are typical of the claims of all Class members, because all such claims arise from the same set of facts regarding TD Bank's wrongful conduct in allowing unauthorized accounts to be opened.

72.      *Fed. R. Civ. Proc. 23(a)(4) Adequacy:* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is a more than adequate representative of the Class in that Plaintiff is a victim of the Unauthorized Account Opening, has incurred reasonable mitigation damages as a result of the Unauthorized Account Opening, and brings the same claims on behalf

of herself and the putative Class. Plaintiff has no interests antagonistic to that of the Class members. Plaintiff has retained counsel who are competent and experienced in litigating class actions, including class actions following data breaches and unauthorized data use (*i.e.,* identity fraud) and against banks, and specifically TD Bank. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

73.    *Fed. R. Civ. Proc. 23(b)(2) Injunctive and Declaratory Relief:* TD Bank has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

74.    *Fed. R. Civ. Proc. 23(b)(3) Superiority:* It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

75.    A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.    The unnamed members of the Class are unlikely to have an interest in individually controlling the prosecution of separate actions;

    b.    Concentrating the litigation of the claims in one forum is desirable;

    c.    Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d.      Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

76.     Plaintiff knows of no unique difficulty to be encountered in the prosecution of this action that would preclude its maintenance as a class action.

77.     *Fed. R. Civ. Proc. 23(c)(4) Issue Certification:* Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

a.      Whether TD Bank owed a legal duty to Plaintiff and the Class to exercise due care in safeguarding their PII and to not allow unauthorized accounts to be opened in their names;

b.      Whether TD Bank's security measures to protect its Online Banking system from opening unauthorized accounts was reasonable considering best practices recommended by industry experts;

c.      Whether TD Bank's failure to institute adequate protective security and authentication measures allowing Unauthorized Account Opening amounted to negligence;

d.      Whether TD Bank failed to take commercially reasonable steps to safeguard and authenticate consumer PII because of the Unauthorized Account Opening; and

e.      Whether adherence to FTC data security recommendations and industry standards on data security would have reasonably prevented the Unauthorized Account Opening.

78.     Finally, all members of the proposed Class are readily ascertainable. TD Bank has

access to consumer names and addresses affected by the Unauthorized Account Opening. Using this information, Class members can be identified and ascertained for the purpose of providing constitutionally sufficient notice.

**CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF**
**NEGLIGENCE**
**(On behalf of Plaintiff and the Class)**

79.     Plaintiff repeats and incorporates by reference paragraphs 1-78.

80.     TD Bank, one of the ten largest banks in the U.S., is no novice to the widespread fraud committed every day by unauthorized third parties by opening unauthorized accounts.

81.     The Wells Fargo scandal and banking industry investigations and scrutinization that followed, put TD Bank on notice that it has a duty to protect innocent consumers' financial and personal information.

82.     TD Bank had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class members could and would suffer if the PII was used to open unauthorized accounts.

83.     TD Bank had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed by unauthorized parties. This duty includes, *inter alia*, designing, maintaining and testing its Online Banking protocols to ensure that Plaintiff and Class members' PII was adequately screened, authenticated, and protected and that employees tasked with processing such information were adequately trained on cyber security measures regarding consumer PII.

84.     Especially considering the Sandhills Unauthorized Account Openings, Plaintiff and the Class members were the foreseeable and probable victims of any inadequate security practices and procedures that TD Bank employed. TD Bank knew of or should have known of (a) the

inherent risks in collecting and processing the PII of Plaintiff and the Class, (b) the critical importance of providing adequate security of that PII, (c) that TD Bank had inadequately trained its employees, and (d) that TD Bank security protocols were insufficient to protect the PII of Plaintiff and Class members because TD Bank failed to verify that PII was authorized to be used to open TD checking and savings accounts.

85.     TD Bank's own conduct created a foreseeable risk of harm to Plaintiff and Class members. TD Bank's misconduct included, but was not limited to, its failure to take the steps to prevent the unauthorized account opening as set forth herein, foremost being to verify that the PII was authorized to be used by the person whose PII was used. TD Bank's misconduct also included its decision that it would not comply with industry standards for the safekeeping and authentication of consumer PII, which reasonably would have prevented the Unauthorized Account Opening.

86.     Section 5 of the FTC Act prohibits "unfair…practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as TD Bank, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of TD Bank's duty in this regard.

87.     TD Bank further violated Section 5 of the FTC Act by failing to use reasonable measures to protect consumer PII and not complying with applicable industry standards, as described herein. TD Bank's conduct was particularly unreasonable given the nature and amount of PII it received using its Online Banking system and stored, and the foreseeable consequences of the Unauthorized Account Opening including, specifically, the damages that would result to Plaintiff and Class members if third parties were permitted to open and use bank accounts.

88.     Plaintiff and the Class members had no ability to prevent the Unauthorized Account Opening because TD Bank never took the simple act of contacting them to confirm identity and

account opening authorization before account opening.

89.     TD Bank breached its duty to Plaintiff and the Class by failing to exercise ordinary and reasonable care in protecting and safeguarding their PII while it was within TD Bank's possession or control.

90.     TD Bank unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent unauthorized use of consumers' PII to open accounts.

91.     TD Bank also unlawfully breached its duty to adequately disclose to Plaintiff and Class members the existence and scope of the Unauthorized Account Openings.

92.     But for TD Bank's wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff and Class Members' PII would not have been exploited and the damages caused by the Unauthorized Account Openings would not have occurred.

93.     As a result of TD Bank's negligence, Plaintiff and the Class have suffered and will continue to suffer damages and injury including, but not limited to, out-of-pocket expenses associated with mitigating against the Unauthorized Account Opening, such as time off work and lost sales commissions, time spent monitoring accounts and changing passwords, effort spent signing up for credit monitoring services, damage to credit, and other current and future consequences of the Unauthorized Account Opening.

94.     These harms are directly and proximately caused by the Unauthorized Account Opening.

**SECOND CLAIM FOR RELIEF**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**(On behalf of Plaintiff and the Class)**

95.     Plaintiff repeats and incorporates by reference paragraphs 1-78 above.

96.     Under the Fair Credit Reporting Act ("FCRA"), TD Bank has a duty to provide accurate information regarding checking or savings accounts to the credit reporting agencies and a duty to adequately investigate a dispute upon notice. *See* 15 U.S.C. §§ 1681s-2(a), (b).

97.     TD Bank methodically reports the status of all customer accounts to one or more credit reporting agencies.  For example, TD Bank does business with Early Warning Services, LLC ("Zelle").  TD Bank also has claimed to utilize the services of all three of the major general credit reporting bureaus, Equifax, Experience, and TransUnion.

98.     Reporting an account as open to the credit bureaus when the account was in fact opened without authorization, violates the FCRA.

99.     Reporting transactions from an unauthorized account to a credit bureau violates the FCRA.

100.    Despite the clear and unambiguous requirements of the FCRA, Defendant regularly provides inaccurate information regarding checking accounts to one or more credit reporting agencies and fails to adequately investigate or authenticate unauthorized and illegal accounts.

101.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, and all other provisions of the FCRA, TD Bank is liable for negligently and willfully violating the FCRA.  All legal and equitable relief under the FCRA is appropriate in light of the continuing egregious conduct of TD Bank.

### THIRD CLAIM FOR RELIEF
### VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT
### (On behalf of Plaintiff and the Class)

102.    Plaintiff repeats and incorporates by reference paragraphs 1-78.

103.    Congress created the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq*., in order to establish a framework to regulate electronic fund and remittance transfer systems, and to establish individual consumer rights related to electronic fund transfers.

104.    Pursuant to EFTA, "No person may issue a consumer any card, code, or other means of access to such consumer's accounts for the purpose of initiating an electronic fund transfer other than (1) in response to a request or application therefor; or (2) as a renewal of, or in substitution for, an accepted card, code, or other means of access, whether issued by the initial issuer or a successor." 15 U.S.C. § 1693i(a).

105.    TD Bank has violated and continues to violate this prohibition every time it opens unauthorized accounts, issues debit and/or credit cards for such accounts, or facilitates any means of access to the unauthorized accounts allowing for electronic funds transfers.

106.    TD Bank has violated EFTA each time it made an electronic fund transfer without full disclosure of all terms to the customer and customer approval of the account. 15 U.S.C. §§ 1693i(a).

107.    Pursuant to 15 U.S.C. 1693m, and other provisions of EFTA, TD Bank is liable for actual damages and statutory damages of not less than $100 nor greater than $1,000 based on the frequency, persistence, and outrageousness of its actions.  Plaintiff and the Class is also entitled to reimbursement for her legal fees and expenses.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class as heretofore identified, respectfully prays this Honorable Court for judgment as follows:

A.  Certification for this matter to proceed as a class action on behalf of the proposed Class under Fed. R. Civ. Proc. 23;

B.  Designation of Plaintiff as Class Representative and designation of the undersigned as Class Counsel;

C.  Actual, statutory, punitive, or exemplary damages in an amount according to proof;

D.  Injunctive or declaratory relief;

E.  Pre- and post-judgment interest at the maximum rate permitted by applicable law;

F.  Costs and disbursements assessed by Plaintiff in connection with this action, including

    reasonable attorneys' fees pursuant to applicable law;

G.  For attorneys' fees under the common fund doctrine and all other applicable law; and

H.  Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demand a trial by jury pursuant to

Fed. R. Civ. Proc. 38(b) on all claims so triable.

Dated: September 6, 2022                    Respectfully submitted,

                                            */s/ Jeff Ostrow*
                                            Jeff Ostrow (FBN 121452)
                                            Jonathan M. Streisfeld (FBN 117447)
                                            **KOPELOWITZ OSTROW P.A.**
                                            One W. Las Olas Blvd., Suite 500
                                            Fort Lauderdale, Florida 33301
                                            Telephone: (954) 525-4100
                                            Facsimile: (954) 525-4300
                                            ostrow@kolawyers.com
                                            streisfeld@kolawyers.com

                                            Lynn A. Toops*
                                            Amina A. Thomas*
                                            Lisa M. La Fornara*
                                            **COHEN & MALAD, LLP**
                                            One Indiana Square
                                            Suite 1400
                                            Indianapolis, IN 46204
                                            Telephone: (317) 636-6481
                                            ltoops@cohenandmalad.com
                                            athomas@cohenandmalad.com
                                            llafornara@cohenandmalad.com

                                            *pending *pro hac vice* admission

                                            *Counsel for Plaintiff and the Proposed Class*